IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY | § | |
| | § | |
| V. | § | |
| | § | |
| NATIONAL UNION FIRE INSURANCE | § | C.A. NO. 10CV06061-HFS |
| AND NORTHLAND INSURANCE | § | |
| COMPANY | § | |

## PLAINTIFF'S OBJECTION AND MOTION TO STRIKE DEFENDANT NORTHLAND'S EXPERT DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ADMIRAL INSURANCE COMPANY, Plaintiff in the above-referenced matter, and in accordance with Rule 26 of the Federal Rules of Civil Procedure, files this Objection and Motion to Strike Defendant Northland's Expert Disclosures designating retained expert Douglas R. Richmond, and would show the Court the following:

### I. Facts

1. Correctional Services Corporation (hereinafter "CSC"), Youth Services International, Inc. (hereinafter "YSI") and Youth Services International of Missouri, Inc. (hereinafter "YSIM") (collectively referred to as "Underlying Defendants") were sued in Holt County, Missouri in a suit styled Case No. 06 AT CV0065, *Heartland Educational Institute v. Youth Services Intl. of Missouri, Inc., et al*, in the Circuit Court of Holt County, Missouri, 4th Judicial District (hereinafter, the "Underlying Lawsuit").

2. The Underlying Lawsuit alleged that CSC, YSI and YSIM breached a lease agreement with the plaintiff and caused extensive property damage to the subject of the lease: a community college campus that was being used as a center for wayward youth called Tarkio Academy. The Fifth Amended Petition alleged that the lease began on September 1, 1994 and

ended on June 30, 2004. The Petition alleged breach of the lease agreement, waste and negligence against all defendants. Additionally, it alleged that the corporate veil between YSIM and the other defendants should be pierced to allow recovery against all defendants for the acts of YSIM because YSIM, was merely the alter ego of YSI and CSC. The Petition further alleges that YSI and CSC are successors to all obligations owed to plaintiff by YSIM, including the lease, and that they assumed all duties and obligations under the lease and operated under its terms and conditions.

3. Plaintiff issued several insurance policies to Correctional Services Corporation and Youth Services International, Inc. Those policies collectively referred to as the "Admiral Policies" are Policy No. A94EG24130, effective from February 1, 1994 through February 1, 1995; Policy No. A01AG09917, effective from February 1, 2001 through May 1, 2002; Policy No. A02AG13430, effective from May 1, 2002 through May 1, 2003; Policy No. A03AG16900, effective from May 1, 2003 through May 1, 2004; Policy No. CA000003840-04, effective from May 1, 2004 through May 1, 2005.

4. National Union Fire Insurance Company issued Policy Nos. 7739894, 3478347, 1409402, and 1409411, which are combined health care facility professional liability and commercial general liability policies, to Youth Services International, effective from 1995 to 1999. Policy No. 3468506 is primary policy issued to Correctional Services Corporation and Youth Services International, Inc., effective February 1, 2001 to May 1, 2002.

5. Northland Insurance Company issued Policy No. KA000028, which is a combined commercial general liability and commercial professional liability policy, to Correctional Services Corporation, effective February 1, 2000 to February 1, 2001.

6. Plaintiff provided a defense to its insureds against the Underlying Lawsuit under a reservation of its rights. Despite having been put on notice of the Underlying Lawsuit by their insureds, none of the Defendants participated or contributed to the defense of their insureds. Given that the parties disagree as to the existence of coverage for this claim, Admiral filed this Declaratory Judgment, Equitable Contribution and Subrogation action seeking judicial resolution of this dispute. Defendant Northland was not a party to the Underlying Lawsuit.

7. Plaintiff Admiral is seeking recovery from Defendant Northland for its proportional share of the $1,148,567.99 in attorneys' fees and expenses incurred in defense of Northland's insured in the Underlying Lawsuit.

## II. Objections To Expert Report of Douglas R. Richmond

8. Defendant Northland has disclosed Mr. Douglas R. Richmond to provide testimony at trial. Mr. Richmond is identified as a senior vice president with Aon Risk Services, Inc., who will offer opinion testimony on subjects, which include the following: (1) that Northland acted reasonably in declining to defend or indemnify CSC and YSI when they tendered to Northland; (2) it was reasonable for Northland to deny coverage based on the lack of an "occurrence;" (3) the negligence claim included in the Amended Fifth Petition was merely a re-characterization of the breach of lease and waste claims, and thus, did not constitute an "occurrence; (4) it was reasonable for Northland to disclaim coverage based on the exclusions contained in the policy; (5) Northland never had any obligation to fund CSC's and YSI's defense during the life of the Heartland case; and (6) because Northland never acted unreasonably in relation to the Heartland case it cannot have vexatiously refused to pay any amounts allegedly due its insureds. *See* Defendant Northland's Rule 26(a)(2) Expert Disclosure attached hereto and incorporated as if set forth fully herein as **Exhibit "A."**

9. Mr. Richmond should not be permitted to testify as to these subjects given that they consist of legal conclusions, matters that would unreasonably invade the province of the jury and matters that are not at issue in the Complaint.

10. In his report, Mr. Richmond provides several opinions regarding what is and is not covered under Northland's policy. Specifically, in his report, Mr. Richmond states that the exclusions in the policy excluded all of the allegations in the earlier *Heartland* petitions. *See* **Exhibit "A"** at page 5. (stating "that exclusion likewise applied to all of the allegations in the earlier petitions"). The report also states that Northland never had any obligation to fund CSC's and YSI's defense during the *Heartland* case. *See* **Exhibit "A"** at page 5. (stating "Northland never had any obligation to fund CSC's and YSI's defense during the life of the Heartland case"). The report also opines that under self-insured retention endorsement there was no duty to defend CSC or YSI, and that there was no coverage for CSC or YSI under the Northland policy:

> Under the self-insured retention endorsement, it had no duty to defend CSC or YSI; any potential obligation it had to pay defense costs did not arise until the settlement of the Heartland case, at which time it would pay them either as loss or legal expense to the extent they exceeded the policies retained limit. Of course, at the time that the Heartland case settled, there still had been no showing of coverage.

*See* **Exhibit "A"** at page 5.

As detailed further below, whether there existed a duty to defend is the court's decision, and not the decision of Mr. Richmond. *See Reliance Ins. Co. v. Shenandoah S., Inc.*, 81 F.3d 789, 791 (8th Cir. 1996) (concluding that he interpretation and construction of insurance policies is a matter of law). Thus, such opinions, which are no more than legal conclusions, should be stricken.

11. Mr. Richmond also opines throughout his report that Northland acted reasonably. The report states that Northland acted reasonably in declining to defend CSC or YSI. *See*

**Exhibit "A"** at page 4. The report also concludes that Northland acted reasonably in its denial of coverage based on the allegations in the petition. *See* **Exhibit "A"** at page 4. The report further provides that Northland acted reasonably in its denial of coverage based on the exclusion for damage to property. *See* **Exhibit "A"** at page 5. Like the opinions above, these opinions constitute legal conclusions and should be stricken.

### III. Argument & Authorities

12.    Under the Federal Rules of Evidence, the opinions of Mr. Richmond detailed above are inadmissible. A trial court may exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be. *Hogan v. AT&T*, 812 F.2d 409, 411 (8th Cir. 1987).

13.    In *In re Acceptance Insurance Companies Securities Litigation*, 423 F.3d 899 (8th Cir. 2005), investors brought a securities fraud action against insurer and its corporate officers. The district court granted summary judgment for the defendants, finding that the investors would be unable to meet the scienter requirements of the relevant sections of the Exchange Act and the SEC Rules. *Id.* at 904. In so holding, the district court ruled that affidavits of the investor's experts were inadmissible, because the experts simply took the investor's statement of facts as true and did not review the record to ascertain whether the statements were supported. *Id.* at 905. The Eighth Circuit affirmed the district court's holding, finding that, "[t]he opinions themselves were legal conclusions about the facts of the case as presented to the experts by the shareholders. As a result, the expert opinions were merely opinions meant to substitute the judgment of the district court." *Id.* (citing *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003)). The Eighth Circuit further held that, "[w]hen the expert opinions are

little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements." *Id.* (citing *U.S. v. Ingle*, 157 F.3d 1147, 1152 (8th Cir. 1998)).

14. In *J.E. Jones Const. Co. v. Marsh USA*, Inc., 2008 WL 2225732 (E.D. Mo. 2008), a plaintiff retained an insurance broker to provide expert opinions as to whether defendant breached its duties under an agreement between the parties. *Id.* at 1. This Court excluded the broker's testimony because his opinions were *legal conclusions which invaded the province of the jury*. *Id.* Even though the broker had years of experience and was familiar with similar agreements, he was not qualified to testify as to what constitutes a breach of a duty. *Id.* The Court noted that broker's testimony would only serve to advise the trier of fact as to what conclusion to reach, rather than to assist the trier of fact. *Id.*

15. Likewise, Mr. Richmond's testimony is inadmissible and the Court should strike Northland's expert disclosure because his opinions are solely legal conclusions which serve to invade the province of the jury. Accordingly, it should be excluded.

WHEREFORE, for the reasons set forth above, Plaintiff respectfully urges the Court to strike the designation of Douglas R. Richmond as an expert for Defendant.

Respectfully submitted,

**ALLMAYER & ASSOCIATES, P.C.**

By: */s/ Daniel N. Allmayer*
Daniel N. Allmayer, #32578
1401 Bryant Building
1102 Grand Boulevard
Kansas City, MO 64106
(816) 221-2262
FAX: (816) 221-6273
dna@allmayerlaw.com
general@allmayerlaw.com

RYMER, MOORE, JACKSON & ECHOLS, P.C.

By: __/s/ Nathan M. Rymer__
    Nathan M. Rymer, TX00792814
    Laura W. Slay, TX24045210
    2801 Post Oak Blvd., Suite 250
    Houston, Texas 77056
    Telephone: (713) 626-1550
    Facsimile: (713) 626-1558
    nrymer@rmjelaw.com
    lslay@rmjelaw.com

ATTORNEYS FOR PLAINTIFF
ADMIRAL INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Dale L. Beckerman
Mimi E. Doherty
Deacy & Deacy
920 Main Street, Suite 1900
Kansas City, Missouri 64105
*Attorneys for Defendant Northland Insurance Company*

By: __/s/ Daniel N. Allmayer__
    Daniel N. Allmayer